United States District Court
Southern District of Texas

**ENTERED**

March 31, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRAVIS DWIGHT GREEN, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-13-1899 |
| | § | |
| WILLIAM STEPHENS, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

This case is before the Court on Petitioner Travis Dwight Green's Amended Petition for Writ of Habeas Corpus (Docket No. 30), Respondent William Stephens' Answer (Docket No. 43), and Green's Reply and Traverse (Docket No. 49). For the following reasons, all claims in the amended petition with the exception of Green's fourth claim for relief are dismissed with prejudice.

## I.       BACKGROUND

Green was convicted of capital murder and sentenced to death for the rape and murder of Kristin Loesch. Prior to trial, Green invoked his right to represent himself. The Texas Court of Criminal Appeals ("TCCA") summarized the facts surrounding Green's self-representation.

> [O]n September 20, 1999, [Green] requested appointed counsel, and the court appointed Bill Goode and Charles Hinton. Sometime between those appointments and January 2000, Wayne Hill apparently replaced Bill Goode as appointed counsel. By late February 2000, [Green] had started filing his own motions, including a motion for hybrid representation in which he stated that he "has no formal education . . . but does have the ability to do legal research and assist his counsel in preparing the pre-trial motion." Also in the motion, he requested that the court not require him to waive his right to counsel in order to be permitted to file motions.
>
> On March 2, 2000, [Green] filed a *pro se* motion to dismiss his court-appointed attorneys and continue *pro se*. At the March 21 hearing on

this motion, [Green] told Judge Michael T. McSpadden that he wanted his attorneys discharged. The judge noted that the law required that he hold a hearing to make [Green] aware of the dangers and disadvantages of self-representation and to determine whether [Green] was making his decision knowingly and intelligently. [Green] responded that he needed time to prepare his defense but that he would like [the] court to appoint . . . two attorneys to act as his assistants. The judge pointed out the apparent contradiction with this request and his earlier assertion that he wanted Hill and Hinton discharged. [Green] responded that he wanted two new attorneys and that he had his "own confidential reasons" for wanting Hill and Hinton discharged.

The trial judge explained to [Green] that he could appoint a "standby" attorney who would be available only on a consulting basis and would not take an active role in the trial. Rather, [Green] would be responsible for conducting his defense, including making his own objections and questioning witnesses, according to the rules of procedure. [Green] told the judge that he understood and that he was "competent enough and intelligent enough" to represent himself, but that he might need assistance with legal circumstances that he had never encountered.

The court established that [Green] was thirty-one (31) years old, received his General Equivalence Degree (GED) while in prison, and was a certified telecommunications technician and sound frequency specialist. When the judge asked about the extent of his knowledge regarding the rules of evidence and the types of things he would have to do in representing himself, [Green] conceded that he had no experience in the law but just needed time to study and research. Upon further questioning, [Green] noted that he was somewhat familiar with jury selection and calling witnesses. [Green] also told the court that he had studied some of the rules of trial and named several relevant legal resources that he had reviewed.

[Green] again stated his understanding that he would have to follow the same rules as an attorney. He also stated that he had never been declared incompetent or insane and was not claiming to be incompetent or insane now. Finally, [Green] executed the appropriate waiver of his right to counsel. Because [Green] would not name a different attorney or give reasons for dismissing Hill and Hinton, the trial judge continued the appointment of both attorneys as standby counsel. Fn.

Fn.  On April 4, 2000, the trial court appointed Tyrone Moncriffe to replace Hinton, and on July 17, 2000, Hill was allowed to withdraw as standby counsel because [Green] refused to communicate with him and refused to allow him to hire an investigator to look into the allegations against [Green].  On August 3, [Green] filed a motion to dismiss the entire defense team.  The motion was denied.

On August 17, 2000, Judge Robert Jones, who had taken over the trial, held a second hearing concerning [Green]'s expressed desire to proceed without counsel.  [Green] told Judge Jones that he had already been through this procedure with Judge McSpadden, but [Judge] Jones told [Green] that they would be going through it again. In addition to covering the same concepts Judge McSpadden had covered in the previous hearing, Judge Jones asked [Green] if he understood that he must protect his record at trial or risk forfeiting various claims on appeal.  [Green] said that he understood this. [Green] also indicated that he understood that he had to present his defense in the proper legal manner, including preparing motions, subpoenaing witnesses, looking at evidence, and making objections. [Green] then executed his second written waiver of his right to counsel.  Tyrone Moncriffe continued as standby counsel.

On September 21, 2000, [Green] reaffirmed his desire to represent himself, but the court denied both his request to dismiss Moncriffe as standby counsel and his request to dismiss [a] court-appointed investigator . . . .  Judge Jones also ordered on his own motion that [Green] be evaluated by a psychiatrist for competency to stand trial and sanity.Fn.

Fn.    A competency evaluation was filed in which the examiner determined that [Green] was competent to stand trial and had made his decision to represent himself voluntarily and with a reasonable degree of rational understanding. Although the examiner noted no record of previous psychiatric treatment and no indication of a current serious mental disorder, he did not expressly evaluate [Green]'s

3

sanity.

Prior to the beginning of general voir dire on November 14, 2000, the court again inquired as to [Green]'s desire to represent himself and [Green] reaffirmed that he chose to proceed *pro se*. The scenario repeated itself on November 29, 2000, on December 4, 2000, just prior to opening statements, and on December 5, 2000, just after trial began.

After the jury found him guilty, [Green] reasserted his right to an attorney and Moncriffe took over the case for the duration of the punishment phase. Following closing arguments by the attorneys, but prior to the time the jury retired, [Green] complained that he had not been allowed to give his "speech." He complained that while he had given up the right to represent himself, he had not refused his "right to speak." The trial judge had him removed to his cell and retired the jury. The jury's verdict resulted in [Green] receiving the death penalty. The court appointed counsel to represent [Green] on appeal.

*Green v. State*, No. AP-74,036, slip op. at 2-6 (Tex. Crim. App. June 26, 2002).

The TCCA affirmed Green's conviction and sentence. *Id.* On March 16, 2013, the TCCA denied Green's application for a writ of habeas corpus. *Ex Parte Green*, No. WR-48019-02, 2013 WL 831504 (Tex. Crim. App. Mar. 6, 2013). Green filed his initial federal petition on March 6, 2014, and amended his petition on October 2, 2014.

## II. THE APPLICABLE LEGAL STANDARDS

This federal petition for habeas relief is governed by the applicable provisions of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 335-36 (1997). Under the AEDPA, federal habeas relief based upon claims that were adjudicated on the merits by the state courts cannot be granted unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Kitchens v. Johnson*, 190 F.3d 698, 700 (5th Cir. 1999).

4

For questions of law or mixed questions of law and fact adjudicated on the merits in state court, this Court may grant federal habeas relief under 28 U.S.C. § 2254(d)(1) only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent]." *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). Under the "contrary to" clause, this Court may afford habeas relief only if "'the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.'" *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)), *abrogated on other grounds by Lewis v. Thaler*, 701 F.3d 783, 791 (5th Cir. 2012).

The "unreasonable application" standard permits federal habeas relief only if a state court decision "identifies the correct governing legal rule from [the Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 406. "In applying this standard, [courts] must decide (1) what was the decision of the state courts with regard to the questions before [them] and (2) whether there is any established federal law, as explicated by the Supreme Court, with which the state court decision conflicts." *Hoover v. Johnson*, 193 F.3d 366, 368 (5th Cir. 1999). A federal court's "focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence." *Neal v. Puckett*, 239 F.3d 683, 696 (5th Cir. 2001), *aff'd*, 286 F.3d 230 (5th Cir. 2002) (en banc). The solitary inquiry for a federal court under the "unreasonable application" prong becomes "whether the state court's determination is 'at least minimally consistent with the facts and circumstances of the case.'" *Id.* (quoting *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997)); *see also Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001) ("Even though we cannot reverse a decision merely because we

would reach a different outcome, we must reverse when we conclude that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'").

The AEDPA precludes federal habeas relief on factual issues unless the state court's adjudication of the merits was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254 (d)(2); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). The State court's factual determinations are presumed correct unless rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Jackson v. Anderson*, 112 F.3d 823, 824-25 (5th Cir. 1997).

## III.   **ANALYSIS**

Green's amended petition raises thirteen claims for relief. In his reply to Respondent's answer, Green expressly abandons his ninth claim for relief. The remaining twelve claims are addressed below.

### A.   Ineffective Assistance of Counsel

In his first, fifth, and thirteenth claims for relief, Green contends that he received ineffective assistance of trial counsel. Respondent argues that these claims are procedurally defaulted.

AEDPA requires that a prisoner exhaust his available state remedies before raising a claim in a federal habeas petition.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted unless it appears that (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(I) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). As the Fifth Circuit explained in a pre-AEDPA case, "federal courts must

respect the autonomy of state courts by requiring that petitioners advance in state court all grounds for relief, as well as factual allegations supporting those grounds. "[A]bsent special circumstances, a federal habeas petitioner must exhaust his state remedies by pressing his claims in state court before he may seek federal habeas relief." *Orman v. Cain*, 228 F.3d 616, 619-20 (5th Cir. 2000); *see* 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ."). This rule extends to the evidence establishing the factual allegations themselves. *Knox v. Butler*, 884 F.2d 849, 852 n.7 (5th Cir. 1989) (citing 28 U.S.C. § 2254(b)); *see also Jones v. Jones*, 163 F.3d 285, 298 (5th Cir. 1998) (noting that "[s]ubsection (b)(1) [of AEDPA] is substantially identical to pre-AEDPA § 2254(b)"). Green acknowledges that these claims are procedurally defaulted. *See* Reply and Travers to respondent's Answer (Doc. # 49) at 2. Because Petitioner did not present these claims to the Texas state courts, he has failed to properly exhaust the claims, and this Court may not consider them. *Knox*, 884 F.2d at 852 n.7.

Ordinarily, a federal habeas petition that contains unexhausted claims is dismissed without prejudice, allowing the petitioner to return to the state forum to present his unexhausted claims. *Rose v. Lundy*, 455 U.S. 509 (1982). Such a result in this case, however, would be futile because Green's unexhausted claims would be procedurally barred as an abuse of the writ under Texas law. On habeas review, a federal court may not consider a state inmate's claim if the state court based its rejection of that claim on an independent and adequate state ground. *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996). A procedural bar for federal habeas review also occurs if the court to which a petitioner must present his claims to satisfy the exhaustion requirement would now find the unexhausted claims procedurally barred. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Texas prohibits successive writs challenging the same conviction except in narrow circumstances. Tex. Code Crim. Proc. Ann. art. 11.071 § 5(a). The TCCA will not consider the merits or grant relief on a subsequent habeas application unless the application contains sufficient specific facts establishing the following:

> (1) the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;
>
> (2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt; or
>
> (3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial under Article 37.071, 37.0711, or 37.072.

*Id.* The TCCA applies its abuse of the writ doctrine regularly and strictly. *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995) (per curiam).

Green does not claim that he could not have presented the claims in his state habeas petition because the factual basis for the claim did not exist, or that he is actually innocent. Therefore, Green's unexhausted claims do not fit within the exceptions to the successive writ statute and would be procedurally defaulted in the Texas courts. *Coleman*, 501 U.S. at 735 n.1. That bar precludes this Court from reviewing Green's claim absent a showing of cause for the default and actual prejudice attributable to the default, or that this Court's refusal to review the claim will result in a fundamental miscarriage of justice. *Id.* at 750.

1. <u>Cause</u>

Green argues that the claims are unexhausted because his state habeas counsel rendered

ineffective assistance in failing to raise them. In *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), the Supreme Court carved out a narrow equitable exception to the rule that a federal habeas court cannot consider a procedurally defaulted claim of ineffective assistance of counsel.

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim . . . where appointed counsel in the initial-review collateral proceeding . . . was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 . . . (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

*Martinez*, 132 S.Ct. at 1318-19.

Ken McLean represented Green in his state habeas corpus proceeding. McLean filed an application raising several claims for relief, including claims pertaining to Green's self-representation. SH at 17-30.[1] When the trial court instructed McLean to submit proposed findings of fact, SH at 203, McLean responded that he could not find support for any claim for relief, and thus could not submit proposed findings of fact. *Id.* at 279-81. The state habeas court nonetheless reviewed the claims and recommended that the TCCA deny relief. *Id.* at 300-23. Green argues that counsel effectively abandoned him, and was thus ineffective. To determine whether state habeas counsel was ineffective, the Court must ascertain whether he rendered deficient performance and, if so, whether Green was prejudiced by that performance.

2.  Ineffective Assistance of Penalty Phase Counsel

Green faults attorney Moncriffe for calling only seven witnesses during the penalty phase, only one of whom was a relative of Green. The other six, he contends, had only brief contact with him. He says that the examinations were cursory, and elicited only vague positive comments about

---

[1]     "SH" refers to the transcript of Green's state habeas corpus proceedings.

Green.

Citing the American Bar Association's ("ABA") Guidelines, Green argues that defense counsel in a capital case have a duty to investigate medical, family, and social history, as well as other relevant information that might be useful as mitigation evidence. Specifically, he argues that appointed counsel Goode, Hinton, and Hill represented him for approximately six months during the pretrial phase, before Green invoked his right to represent himself. He also argues that Moncriffe was appointed on April 4, 2000, "apparently to handle punishment phase investigations and defenses . . . ." Amended Petition ("Am. Pet.") at 19. He argues that counsel had a duty, during the time before Green represented himself, to investigate and prepare a mitigation for the penalty phase.

As a preliminary matter, Green's assertion that Moncriffe was appointed to prepare a penalty phase case is unfounded. As the statement of facts quoted above makes clear, Moncriffe was appointed as standby counsel to replace Hinton. At that time, Green had already invoked his right to self-representation, and there is nothing in the record or the context of Moncriffe's appointment to suggest that he was appointed as anything other than replacement standby counsel. Thus, until Green relinquished his right to self-representation at the outset of the penalty phase, Moncriffe was standby counsel and nothing else.

Green's argument largely ignores the fact that he effectively fired his counsel several months before trial, thus depriving them of much of the time that could have been used for the investigation Green now argues they should have conducted. The attorney who actually represented Green during the penalty phase, Moncriffe, was appointed mid-trial to serve as standby counsel. The nature of his appointment did not change to that of active counsel until the beginning of the penalty phase.

While Green, again citing the ABA Guidelines, contends that "[a]ttorneys in a capital case are required to immediately put in place plans for a punishment phase defense . . . ." Am. Pet. at 22,

the ABA Guidelines do not control this Court's assessment. The Supreme Court has explained that "the Federal Constitution imposes one general requirement:  that counsel make objectively reasonable choices." *Bobby v. Van Hook*, 130 S.Ct. 13, 17 (2009) (quotation marks and citation omitted). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Premo v. Moore*, 562 U.S. 115, 122 (2011) (quoting *Strickland*, 466 U.S. at 690).  When Green effectively fired his counsel months before trial, however, he placed an insurmountable roadblock in the way of any such preparations.  Having elected to represent himself, he cannot now complain that the attorneys he fired months before trial did not do enough before he fired them so as to deny him of his right to the effective assistance of counsel.

Contrary to Green's characterization, Moncriffe was not appointed to prepare a punishment phase case, but to serve as standby counsel when Green refused to communicate with his then-standby counsel. *See, e.g.*, *United States v. Davis*, 285 F.3d 378, 381 (5th Cir. 2002) (holding that a court's appointment of standby counsel to present mitigating evidence over the objections of a capital defendant violated the defendant's Sixth Amendment right to self-representation). Moncriffe did not assume an active role until the penalty phase was about to begin.  At that point, it was too late to conduct an investigation.  Instead, Moncriffe called the witnesses Green planned to call, and managed to elicit favorable testimony.

To the extent that Green contends that Moncriffe should have requested an adjournment, he makes no showing that any such request would have succeeded.  An adjournment would have meant excusing jurors who had already spent considerable time on the case, only to require them to return at a later date.  Moreover, any need for an adjournment was caused wholly by Green's actions.

"[E]stablish[ing] deficient performance . . . [requires a] show[ing] that counsel's

representation 'fell below an objective standard of reasonableness.'" *Blanton v. Quarterman*, 543 F.3d 230, 235 (5th Cir. 2008) (quoting *Strickland*, 466 U.S. at 688). In evaluating this question, a court must "make every effort to eliminate the distorting effects of hindsight, and attempt to adopt the perspective of counsel at the time of the representation." *Id.* Further, this Court must apply "a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Id.* Applying this "strong presumption," this Court must conclude that, at a minimum, state habeas counsel's conclusion that there was no viable claim of ineffective assistance of penalty phase counsel was reasonable based on the trial record.

Furthermore, under the deferential standard with which this Court must review counsel's performance, *see Strickland v. Washington*, 466 U.S. 668, 687 (1984), it cannot be said that state habeas counsel's representation fell below an objective standard of reasonableness in declining to raise this claim for relief. *See id.* at 687-88. Accordingly, Green did not receive ineffective assistance of state habeas counsel with regard to his first claim for relief, the claim is procedurally defaulted, and this Court cannot grant relief on this claim.

3.    Other Ineffective Assistance of Counsel Claims

In his fifth and thirteenth claims for relief, Green contends that he received ineffective assistance of trial counsel when counsel failed to investigate and present evidence that he was incompetent, and failed to investigate an insanity defense. Respondent argues that Green waived these claims when he elected to represent himself.

"It is clear that the right to counsel may be waived altogether. Presumably, the right to counsel of choice and the right to effective assistance of counsel, as variations of the same theme, can also be waived." *Gandy v. Alabama*, 569 F.2d 1318, 1327 (5th Cir. 1978). The Supreme Court has stated that "a defendant who elects to represent himself cannot thereafter complain that the

quality of his own defense amounted to a denial of 'effective assistance of counsel.'" *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975). Thus, in invoking his right to self-representation, Green waived any claim of ineffective assistance of counsel prior to the time he requested counsel to represent him in the penalty phase. Green argues that his original counsel served for several months before he invoked his right to self-representation, and that Moncriffe did not raise any questions about Green's competency to stand trial after being appointed as standby counsel despite what Green characterizes as evidence that he was incompetent.

The threshold question is whether state habeas counsel rendered ineffective assistance by failing to investigate Green's mental health and failing to raise these claims. " [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Wiggins v. Smith*, 539 U.S.510, 521 (2003) (internal quotation marks and alteration omitted) (quoting *Strickland*, 668 U.S. at 690-91). When assessing the reasonableness of an attorney's investigation, a court must "consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Id.* at 527.

McLean was faced with a record in which two judges conducted several separate colloquies with Green to determine the knowing and voluntary nature of his waiver of his right to counsel. One of those judges, Michael McSpadden, was the judge presiding over Green's habeas application. *See, e.g.*, SH at 324. Green's answers to their questions, while rambling at times, were lucid and responsive.

In addition, an independent expert appointed by the trial court to evaluate Green's competency to stand trial determined that he was competent. Respondent further notes that

13

symptoms of schizoaffective disorder were not observed in Green until 2007, *see* Am. Pet., Ex. C,[2] although Green points to clear symptoms of mental illness displayed early in his time in the Texas Department of Criminal Justice ("TDCJ") following his conviction.   Green specifically notes speculation by TDCJ mental health personnel that his mental illness may have preceded treatment by several years.   The examining psychologist, however, reported that both Green and his mother reported that Green had no previous mental health treatment, and Green had no record of previous evaluation within the Harris County public mental health system.   SH at 239.

While Green cites evidence that he was mentally ill, this Court cannot conclude that McLean, faced with the trial record, fell below prevailing professional norms in concluding that he did not have a viable claim that trial counsel were ineffective for failing to challenge Green's competency to stand trial. The trial record included several separate occasions on which the trial judge inquired as to Green's waiver of counsel and concluded that he understood the effects of that waiver sufficiently to invoke his right to self-representation.   The record included a contemporaneous competency evaluation by a court-appointed mental health professional.   While Green now attacks not only the conclusions, but also the integrity of one of the judges and the psychologist, the record supported McLean's decision not to investigate further, and not to raise ineffective assistance of counsel claims regarding Green's competency to stand trial.   Because state habeas counsel was not ineffective, Green fails to demonstrate cause for his procedural default of these claims, and this Court cannot grant relief.

B.      Competency to Stand Trial

In his second and fourth claims for relief, Green contends that he was incompetent to stand trial.   He further contends that the trial court violated his rights under the Sixth and Fourteenth

---

2       Green was convicted in 2000.

14

Amendments by failing to hold an evidentiary hearing into his competency. Green did not present these claims to the Texas state courts.

When a criminal defendant's competency to stand trial can be reasonably questioned, a trial court must conduct a hearing to determine the defendant's competency. *See Pate v. Robinson*, 383 U.S. 375, 384 (1966). Procedural *Pate* claims, *i.e.*, claims that a trial court erred in failing to convene a competency hearing, are unquestionably subject to the procedural default doctrine. *See Zapata v. Estelle*, 588 F.2d 1017, 1021 (5th Cir. 1979); *see also Rogers v. Gibson*, 173 F.3d 1278, 1289 (10th Cir. 1999). Courts are split, however, as to whether a substantive claim of incompetence, *i.e.*, a claim that the defendant stood trial while he was actually incompetent, can be procedurally defaulted. While many courts have found that substantive claims of incompetency may be procedurally defaulted, *see Smith v. Moore*, 137 F.3d 808, 818-19 (4th Cir. 1998); *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306-07 (9th Cir. 1996); *Bainter v. Trickey*, 932 F.2d 713, 716 (8th Cir. 1991); *United States ex rel. Lewis v. Lane*, 822 F.2d 703, 705 (7th Cir. 1987), other courts have held that language in *Pate* prohibiting the waiver of competency claims applies to the procedural default doctrine as well, *see Rogers v. Gibson*, 173 F.3d 1278, 1289 (10th Cir. 1999); *Medina v. Singletary*, 59 F.3d 1095, 1111 (11th Cir. 1995); *Silverstein v. Henderson*, 706 F.2d 361, 367 (2d Cir.1983), *Zapata v. Estelle*, 588 F.2d 1017, 1021 (5th Cir. 1979). While Green's claims of incompetency are unexhausted, this Court is disinclined to find the substantive claim procedurally barred. Due to this split in the courts, this Court will consider the merits of the substantive competency claim. His procedural claim, however, is subject to procedural default.

As discussed above, the AEDPA requires that a prisoner exhaust his claims in state court before a federal habeas court may grant relief. Green failed to do so. Because Green would now be barred from doing so, his claim that the trial court violated his rights by failing to convene a

competency hearing is procedurally defaulted barring a showing of cause and prejudice, or of actual innocence.

*Martinez*, by its own terms, applies only to underlying claims of ineffective assistance of trial counsel. 132 S.Ct. at 1315. Green contends that the claims are cognizable because the trial court deprived him of effective assistance of counsel. This is merely an attempt to shoehorn a procedurally defaulted competency claim into an ineffective assistance claim so as to avoid the procedural default.

As discussed above, two trial judges conducted several colloquies with Green to determine the knowing and intelligent nature of his waiver of his right to counsel. The record reveals that Green understood his rights and the consequences of his actions. While Green now points to excerpts from the trial transcript that he claims demonstrate that he was not competent to waive his rights, these excerpts merely demonstrate that he was unschooled in the law and was not a skilled public speaker. While they may demonstrate a lack of knowledge of the law and terminology, *e.g.,* referring to standby counsel as his "assistants," they do not demonstrate a lack of understanding of the charges he faced, the possible sentence, or the consequences of waiving his right to counsel. Indeed, contrary to Green's current assertions, some of Green's comments indicate that he had a good understanding of relevant matters. For example, when asked if he had ever seen a psychologist or a psychiatrist, Green was somewhat inarticulate, but explained that he had seen a psychologist "if I got a problem I don't know how to deal with . . .," but not a psychiatrist, because he never had a need to see "someone who had to prescribe medication." 3 Tr. at 28-29. When the trial court asked Green if he understood the implications of self-representation and the limited role of standby counsel, Green replied:

> Your Honor I am competent enough and intelligent enough to represent myself but there will be legal circumstances that I've never dealt with and I will need assistance. There may be something that is inadmissible during trial. If necessary in trial--and for me to go into

16

it blindfolded--I mean Im [sic] going to go and represent myself. I am intelligent enough to represent myself. And I said I need two assistants or even one of a different counsel because I have my own reasons which I cant [sic] disclose of. In order to have a fair trial no one can defend themselves like I can defend my own self.

2 Tr. at 7. Therefore, the record supports the conclusion that Green's waiver of counsel was knowing and voluntary, and the trial court did not deprive Green of effective assistance of counsel.

Moreover, as discussed above, the trial record, including multiple colloquies and an independent competency evaluation, were sufficient to justify state habeas counsel's decision not to pursue claims concerning Green's competency to stand trial. In the absence of ineffective assistance of state habeas counsel, *Martinez* does not provide cause for the default.

Green makes no other showing of cause, nor does he allege that he is actually innocent. Therefore, his claim that the trial court violated his *Pate* rights is procedurally defaulted.

As noted above, however, courts are split as to whether a substantive competency claim is subject to the procedural default doctrine. In the absence of controlling authority, this Court will not find Green's substantive claim defaulted.

Green presents substantial evidence that he was seriously mentally ill within a short time after arriving at TDCJ. This evidence raises questions as to whether that mental illness was present at the time of Green's trial. While mental illness and incompetence to stand trial are not coextensive, the possible presence of such mental illness raises serious questions about Green's competency. Those questions cannot be satisfactorily answered based solely on the documentary evidence now before the Court. The Court thus finds that an evidentiary hearing is necessary on Green's fourth claim for relief.

C.    Knowing and Voluntary Waiver of Counsel

Under the principles announced in *Faretta v. California*, 422 U.S. 806, 835-36 (1975), a

competent criminal defendant has a Sixth Amendment right to represent himself at trial if he waives his right to counsel, and a trial court cannot deny the defendant's motion to proceed *pro se* on the ground that the defendant lacks sufficient knowledge or understanding of the law. "[T]he competence that is required of a defendant is the competence required to *waive the right*, not to represent himself." *Godinez v. Moran*, 509 U.S. 389, 399 (1993).

On direct appeal, the TCCA reviewed the trial record, specifically noting the waiver colloquies, and concluded that Green "made his decision with a full understanding of his right to counsel and the dangers and disadvantages of self-representation. The record also indicates that [Green] made his choice voluntarily." *Green v. State*, No. AP-74,036, slip op. at 6-7 (Tex. Crim. App. June 26, 2002). The state habeas court found the same. SH at 139-42, 154-55.

Green points to some verbal stumbles and his own false statements concerning his education and professional accreditation as evidence that he was not competent to waive counsel. A review of the record, however, reveals a lucid defendant who responded appropriately to the trial court's questions and admonitions. The transcript excerpts cited by Green show a person with limited education and knowledge of the law. Being somewhat inarticulate or confused about legal terminology, however, does not mean that Green's waiver was not knowing, voluntary, and intelligent. At a minimum, the state court's conclusion that the waiver was knowing, voluntary, and intelligent is not unreasonable in light of the record.

Green's can counter-argument does not overcome the deferential standard with which this Court must review the state court's decision.

> The federal law of habeas corpus is "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03, 131 S. Ct. 770, 786 (2011) (internal quotation marks omitted). Federal courts respect the conscientious labor of state courts and promote comity, federalism, and finality through the faithful

application of the . . . AEDPA.

*Castillo v. Stephens*, No. 14-70038 (5th Cir. Feb. 8, 2016)(citing *Jimenez v. Quarterman*, 555 U.S. 113, 121, 129 S. Ct. 681, 686 (2009)). The state habeas court's conclusion is therefore entitled to deference under the AEDPA.

    D.    *Cronic*

In his sixth claim for relief, Green contends that trial counsel's failure to contest his waiver of counsel deprived him of his Sixth Amendment right to counsel under *United States v. Cronic*, 466 U.S. 648 (1984). In *Cronic*, the Court held that the actual or constructive absence of counsel during any critical stage of a criminal proceeding is ineffective assistance of counsel, regardless of any finding of *Strickland* prejudice. Green did not present this claim to the Texas state courts.

As discussed in detail above, Green's waiver of counsel was knowing, voluntary, and intelligent. Because Green's waiver was knowing, voluntary, and intelligent, habeas counsel was not ineffective for failing to argue that Green was deprived of counsel under *Cronic* when his trial lawyers did not object to the waiver. Because Green did not receive ineffective assistance of state habeas counsel, he has no cause for his procedural default, and this Court cannot grant relief on this claim.

    E.    *Giglio*

In his seventh claim for relief, Green claims that the State presented false and misleading evidence in violation of *Giglio v. United States*, 405 U.S. 150 (1972). He contends that DNA evidence presented at trial was false, and argues that the witness, a DNA Analyst from the Houston Police Department Crime Lab, lied about the conclusiveness of the DNA evidence.

Green has never presented this claim to the Texas state courts. Therefore, for the reasons discussed above, it is procedurally defaulted. Procedural default notwithstanding, this claim is

without merit.

The knowing use of perjured testimony by the state violates a defendant's right to due process of law. *See Giglio*, 405 U.S. at 153-54; *Knox v. Johnson*, 224 F.3d 470, 477 (5th Cir. 2000). The Fifth Circuit has explained, however, that

> [t]o establish a due process violation based on the State's knowing use of false or misleading evidence, [a habeas petitioner] must show (1) the evidence was false, (2) the evidence was material, and (3) the prosecution knew that the evidence was false. Evidence is false if, *inter alia,* it is specific misleading evidence important to the prosecution's case in chief. False evidence is material only if there is any reasonable likelihood that [it] could have affected the jury's verdict.

*Nobles v. Johnson*, 127 F.3d 409, 415 (5th Cir. 1997) (internal citations and quotation marks omitted, third alteration in original). "We do not . . . automatically require a new trial whenever 'a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict. . . .' A finding of materiality of the evidence is required . . . ." *Giglio*, 405 U.S. at 154 (quoting *United States v. Keogh,* 391 F.2d 138, 148 (2d Cir. 1968)). When the question of materiality arises, "a new trial is required if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury . . . .'" *Id.*

The DNA evidence presented at trial was retested by Identigene, an independent lab. Green notes that the trial witness testified that Green's DNA matched biological evidence recovered from the victim. The witness further testified that, according to the FBI's database, Green's DNA pattern occurred in 1 of 213 billion African-American people. Green correctly notes that this number would literally make him the only person in the world who could have left that DNA.

Based on the subsequent test, Identigene concluded that the DNA sample excluded 99.9% of the Caucasian, African-American, and Hispanic populations, but did not exclude Green. SH at 270. It is thus not even necessary to determine whether the testimony can, in fact, be characterized

20

as false, or, if so, whether the prosecution knew it was false. The difference in the analysis is not material. The distinction between a zero percent chance that Green was not the contributor of the DNA and a one-tenth of one percent chance that he was not the contributor of the DNA does not create any reasonable likelihood that the original testimony adversely affected the jury's decision. Green therefore fails to meet the materiality test, and this claim is without merit.

F.    *Brady*

In his eighth claim for relief, Green contends that the State violated his right to due process by suppressing information about the criminal backgrounds, poverty, and mental health of members of Green's family. This claim, too, is procedurally defaulted.

While Green raised this claim in his state habeas application, he failed to plead facts demonstrating that he was entitled to relief. Therefore, the state habeas court found the claim procedurally barred. SH at 319. This is a procedural bar that is regularly applied by the Texas courts. *See, e.g.*, *Ex Parte McPherson*, 32 S.W.3d 860, 861 (Tex. Crim. App. 2000); *Ex Parte San Miguel*, 973 S.W.2d 310, 211 (Tex. Crim. App. 1998); *Ex Parte Maldonado*, 688 S.W. 2d 114 (Tex. Crim. App. 1985).

Procedural default notwithstanding, this claim is without merit. A prosecutor must disclose evidence favorable to an accused if it "is of sufficient significance to result in the denial of the defendant's right to a fair trial." *United States v. Agurs*, 427 U.S. 97, 108 (1976). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). The question is not whether the result would have been different. Rather, it is whether given the non-disclosures of material evidence the verdict is less worthy of confidence. In defining the scope of the duty of disclosure, it is no answer that a prosecutor did not have possession of the

21

evidence or that he was unaware of it. Rather, the prosecutor "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).

The State, however, bears no responsibility to direct the defense toward potentially exculpatory evidence that either is in the possession of the defense or can be discovered through the exercise of reasonable diligence. *Rector v. Johnson*, 120 F.3d 551, 558-59 (5th Cir. 1997). Because Green's *Brady* claim rests on information about his own family history, Green had at least as much access to the information as the State. Assuming that the State failed to disclose such information, Green still fails to demonstrate a *Brady* violation.

G.     *Apprendi*

In his tenth claim for relief, Green argues that Texas' future dangerousness special issue violates the rule of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). He once again attempts to shoehorn this claim into an ineffective assistance of counsel claim, by making a cursory allegation that trial and appellate counsel were ineffective for failing to object to the special issue, to try to avoid a procedural default.

In *Apprendi*, the Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. The Supreme Court extended the *Apprendi* holding to capital cases in *Ring v. Arizona*, 536 U.S. 584 (2002). Green argues that the Texas special issue requiring the jury to determine whether there is "a probability that the defendant will commit future acts of violence that would constitute a continuing threat to society" violates *Apprendi* because the language of the special issue reduces the State's burden of proof to something less than proof beyond a reasonable doubt, and the "probability" finding "is functionally equivalent to an element of the offense." Am.

22

Pet. at 97.

The Fifth Circuit has repeatedly rejected similar challenges to the Texas special issues. *See, e.g., West v. Johnson*, 92 F.3d 1385, 1406 (5th Cir. 1996) (rejecting claim that the Texas capital sentencing scheme special issues work as aggravating factors and therefore require detailed definitions of the terms employed therein); *Woods v. Johnson*, 75 F.3d 1017, 1033-34 (5th Cir. 1996) (rejecting argument that the terms used in the special issues are "aggravating factors" and unconstitutionally vague absent definition); *James v. Collins*, 987 F.2d 1116, 1120 (5th Cir. 1993) (holding that the terms "deliberately," "probability," "criminal acts of violence," and "continuing threat to society," "have a common-sense core of meaning that criminal juries should be capable of understanding") (citation omitted); *Milton v. Procunier*, 744 F.2d 1091, 1095-96 (5th Cir. 1984) ("deliberately," "probability," and "criminal acts of violence" "have a plain meaning of sufficient content that the discretion left to the jury" is "no more than that inherent in the jury system itself"). Green now attempts to frame this well-worn argument in a new way. Because, however, ample Fifth Circuit precedent establishes that the special issue passes constitutional muster, neither trial, appellate, nor state habeas counsel were ineffective for failing to challenge the special issue. *See, e.g., Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point."); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("This Court has made clear that counsel is not required to make futile motions or objections."). Green therefore fails to establish either cause for his procedural default of this claim, or a valid underlying claim of ineffective assistance of counsel.

H.     *Atkins*

In his twelfth claim for relief, Green asks this Court to extend the Supreme Court's decision in *Atkins v. Virginia*, 536 U.S. 304 (2002) to find that the Eighth Amendment renders him ineligible

for the death penalty because he is mentally ill.  In *Atkins*, the Supreme Court held that the Eighth Amendment bars the execution of mentally retarded offenders.

Green did not raise this claim in any state court proceeding.  Therefore, for the reasons discussed above, it is unexhausted and procedurally defaulted.  Green fails to demonstrate any cause for the default.

Moreover, Green's claim is barred by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989) (plurality opinion).  In *Teague*, the Supreme Court held that, except in very limited circumstances, a federal habeas court cannot retroactively apply a new rule of criminal procedure. The Court explained that

> a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government.  To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final.

*Id.* at 301.  The AEDPA effectively codified the *Teague* non-retroactivity rule "such that federal habeas courts must deny relief that is contingent upon a rule of law not clearly established at the time the conviction becomes final." *Peterson v. Cain*, 302 F.3d 508, 511 (5th Cir. 2002) (citing *Williams v. Taylor*, 529 U.S. 362, 380-81 (2000).

Procedural default and *Teague* notwithstanding, the Fifth Circuit has expressly held that *Atkins* does not extend to mentally ill individuals who are not mentally retarded. *See, e.g. Mays v. Stephens*, 757 F.3d 211, 219 (5th Cir. 2014); *ShisInday v. Quarterman*, 511 F.3d 514, 521 (5th Cir. 2007).  Therefore, this claim is also precluded on the merits by controlling precedent.

## IV.  CERTIFICATE OF APPEALABILITY

Green has not requested a certificate of appealability ("COA"), but this court may determine whether he is entitled to this relief in light of the foregoing rulings. *See Alexander v. Johnson*, 211

F.3d 895, 898 (5th Cir. 2000) ("It is perfectly lawful for district court's [sic] to deny a COA *sua sponte*. The statute does not require that a petitioner move for a COA; it merely states that an appeal may not be taken without a certificate of appealability having been issued.") A petitioner may obtain a COA either from the district court or an appellate court, but an appellate court will not consider a petitioner's request for a COA until the district court has denied such a request. *See Whitehead v. Johnson*, 157 F.3d 384, 388 (5th Cir. 1988); *see also Hill v. Johnson*, 114 F.3d 78, 82 (5th Cir. 1997) ("[T]he district court should continue to review COA requests before the court of appeals does.").

A COA may issue only if the petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also United States v. Kimler*, 150 F.3d 429, 431 (5th Cir. 1998). A petitioner "makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further." *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000). The Supreme Court has stated that

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253© is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. The issue becomes somewhat more complicated where . . . the district court dismisses the petition based on procedural grounds. We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "[T]he determination of whether a COA should issue must be made by viewing the petitioner's arguments through the lens of the deferential scheme laid

out in 28 U.S.C. § 2254(d)." *Barrientes v. Johnson*, 221 F.3d 741, 772 (5th Cir. 2000).

The Court has carefully considered each of Green's claims and concludes that each of the claims, with the exception of Green's claim that he was tried while incompetent, is foreclosed by clear, binding precedent.   Green thus fails to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  The Court therefore concludes that Green is not entitled to a certificate of appealability on any of the claims dismissed in this Memorandum and Order.

## V.  CONCLUSION AND ORDER

For the foregoing reasons, it is ORDERED as follows:

1.   All claims except the fourth claim for relief in Petitioner Travis Dwight Green's First Amended Petition for a Writ of Habeas Corpus (Docket Entry No. 30) are DENIED.  All claims except the Fourth Claim for Relief in Green's First Amended Petition are DISMISSED WITH PREJUDICE; and

2.   No Certificate of Appealability shall issue with regard to any of the dismissed claims.

The Clerk shall notify all parties and provide them with a true copy of this Order.

SIGNED at Houston, Texas, on this ___29th___ day of March, 2016.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE