**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| TRAVIS DWIGHT GREEN, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 4:13-CV-1899 |
| | § | |
| WILLIAM STEPHENS, *et al*, | § | |
| | § | |
| Respondents. | § | |

## MEMORANDUM & ORDER

On March 29, 2016, this Court dismissed with prejudice all but one of the claims for relief raised in Petitioner Travis Dwight Green's First Amended Petition for a Writ of Habeas Corpus. The Court found that an evidentiary hearing will be needed to adjudicate the remaining claim that Mr. Green was incompetent to stand trial, (Doc. No. 55.)

Respondent has filed a motion for reconsideration of this Court's ruling that Mr. Green's incompetency claim requires an evidentiary hearing. (Doc. No. 57.) Mr. Green filed a response and a cross-motion for reconsideration of the Court's rulings on his first, fifth, and sixth claims for relief, arguing that the denial of relief "rests on manifestly erroneous findings of fact or manifestly erroneous legal rulings." (Doc. No. 64.) Respondent responded to the cross-motion (Doc. No. 68), and Mr. Green replied. (Doc. No. 70.)

## I. BACKGROUND

The factual background of the case is set out in detail in this Court's March 29, 2016 Memorandum and Order. In brief, Mr. Green was convicted of capital murder and sentenced to death for the rape and murder of Kristin Loesch. Prior to trial, Mr. Green waived his right to a

1

lawyer. After the jury returned a verdict of guilty, Mr. Green withdrew his waiver. On the day that the punishment phase of his trial was set to begin, his stand-by counsel was appointed as full-fledged counsel. The claims at issue in these cross-motions pertain to Mr. Green's contentions that he received ineffective assistance of counsel at the penalty phase of his trial, that his lawyers were ineffective in raising his incompetence to stand trial and his incompetence to invoke his right to self-representation at trial, and that he was actually incompetent to stand trial.

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *See Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n. 1 (5th Cir. 2004). Courts typically consider motions for reconsideration under Rule 59(e). A motion under Rule 59(e) must "clearly establish either a manifest error of law or fact or must present newly discovered evidence." Ross v. Marshall, 426 F.3d 745, 763 (5th Cir. 2005) (citing Simon v. United States, 891 F.2d 1154, 1159 (5th Cir. 1990)). Motions under Rule 59(e) "cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Id.* In considering a motion for reconsideration, a court "must strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993).

## III.    ANALYSIS

In his first claim for relief, Mr. Green argued that he received ineffective assistance of counsel at the punishment phase of his trial because counsel failed to investigate and present mitigating evidence.  In his fourth claim, on which the Court ruled that an evidentiary hearing is required, Mr. Green argues that he was incompetent to stand trial.  In his fifth claim, Mr. Green argues that counsel failed to bring evidence of Mr. Green's incompetence to stand trial to the

trial court's attention.  In his sixth claim, Mr. Green contends that counsel's failure to contest the knowing nature of his waiver of counsel deprived Mr. Green of his Sixth Amendment right to counsel.

The Court found that Mr. Green's first, fifth, and sixth claims were unexhausted and procedurally defaulted.  The Court also rejected Mr. Green's argument that ineffective assistance by his state habeas counsel provided cause for his procedural defaults.  (Doc. No. 55 at 6-14.) Mr. Green seeks reconsideration of these findings, alleging multiple grounds of manifest error and manifest injustice committed by the Court. Upon consideration of these arguments, the Court finds that it previously erred in holding that ineffective assistance of state habeas counsel did not provide cause for Mr. Green's procedural defaults. Accordingly, the Court considers Mr. Green's first, fifth, and sixth claims, and finds that an evidentiary hearing is required in order to adjudicate Mr. Green's first claim for relief, regarding the ineffective assistance of his punishment phase counsel.

## A.    First Claim: Ineffective Assistance of Counsel—Punishment Phase

Federal habeas corpus proceedings are a historic and critical method for preventing individuals from being held in custody in violation of the United States Constitution. *Trevino v. Thaler*, 133 S. Ct. 1911, 1917 (2013). Yet, in considering petitions for writ of habeas corpus, federal courts are "guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). "These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Id.* In order to preclude federal review, a state court's procedural rule

denying a claim must be a "nonfederal ground adequate to support the judgment." *Id.* This is known as an "adequate and independent state ground." Additionally, the rule must be "firmly established and consistently followed." *Id.* The doctrine of procedural default is not without exceptions. A federal court may hear an incarcerated person's defaulted claim if he can show "cause" for the default and "prejudice" resulting from the alleged constitutional violation. *Id.*

Texas prohibits successive writs challenging the same conviction except in narrow circumstances, none of which Mr. Green claims to meet. Tex. Code Crim. Proc. Ann. Art. 11.071 § 5(a). This prohibition has already been found to be an "adequate and independent state ground," and it is firmly established and consistently followed. *Coleman v. Quarterman*, 456 F.3d 537, 542 (5th Cir. 2006) ("Texas's abuse of the writ doctrine is a valid state procedural bar foreclosing federal habeas review"). Thus, this Court can only hear Mr. Green's ineffective assistance of counsel claim if he can show "cause" to excuse the default.

Mr. Green argues that he has shown cause for the default because his state habeas counsel was ineffective and failed to raise his trial-level ineffectiveness claim during state habeas proceedings. "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez*, 566 U.S. at 10. In Texas, state habeas review is the first meaningful opportunity to present a claim of ineffective assistance of trial counsel. *Trevino v. Thaler*, 133 S.Ct. 1911, 1919 (2013). This is because "Texas procedure makes it 'virtually impossible for appellate counsel to adequately present an ineffective assistance [of trial counsel] claim' on direct review." *Id.* (quoting *Robinson v. State*, 16 S.W.3d 808, 810 (Tex. Crim. App. 2000)). Thus, if Mr. Green can show that his state habeas counsel was ineffective in failing to raise an ineffective assistance of

trial counsel claim, he can show cause for his procedural default, and this Court can review his ineffective assistance of trial counsel claim—a claim that has yet to be reviewed by any court.

To prevail on a claim for ineffective assistance of counsel, Mr. Green must first show that counsel "made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Matthews v. Davis*, 665 F. App'x 315, 317 (5th Cir. 2016) (*citing Strickland v. Washington*, 466 U.S. 668, 687 (1984)). In order to prevail on the first prong of the *Strickland* test, Petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. Reasonableness is measured against prevailing professional norms, and must be viewed under the totality of the circumstances. *Id.* Although the American Bar Association Standards for the Appointment and Performance of Counsel in Death Penalty Cases do not establish binding rules, they have long been accepted by the Supreme Court as "guides to determining what is reasonable." *Wiggins v. Smith*, 539 U.S. 510, 524 (2003). Review of counsel's performance is deferential. In the context of a capital sentencing proceeding, "the question is whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland*, 466 U.S. at 695. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The issues in this case concern state habeas counsel's limited investigation into potential claims on appeal—including an ineffective assistance of trial counsel claim—and trial counsel's limited investigation into mitigating evidence. "[T]he crux of [Mr. Green]'s claim is not that his

trial counsel made an informed decision not to present certain evidence following a constitutionally sufficient investigation, but that his trial counsel failed to conduct such an investigation in the first place. [Mr. Green] argues that the state trial counsel's failure to investigate would have been obvious to his state habeas counsel as well." *Trevino v. Davis*, 829 F.3d 328, 348 (5th Cir. 2016). Counsel has a "duty to investigate." *Wiggins*, 539 U.S. at 522. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 690-691. In light of these standards, this Court's principal concern in deciding whether Mr. Green's counsel were ineffective "is not whether counsel should have presented a mitigation case. Rather, we focus on whether the investigation supporting counsel's decision not to introduce mitigating evidence of [Mr. Green's] background was itself reasonable." *Wiggins*, 539 U.S. at 522-23.

Mr. Green was represented by Ken McLean in his state habeas corpus proceeding. Mr. McLean filed a twelve-page Application for Writ of Habeas Corpus, alleging seven claims for relief. (Doc. No. 64 at 9.) Of these seven, three claims had already been raised and rejected on direct appeal. Regarding the four claims that had not been briefed, Mr. McLean promised to develop facts and law and brief them "with all deliberate speed." (*Id.*) Mr. McLean never briefed those claims. Instead, six years later, Mr. McLean filed a "Statement of Counsel" informing the court that he "cannot in good faith file Proposed Findings of Fact and Conclusions of Law requesting that the Trial Court recommend to the Texas Court of Criminal Appeals that relief be granted." (Doc. No. 30-2 at 1.) He goes on to explain why each of the seven claims raised in Mr. Green's writ of habeas corpus was "unsupportable."

Troublingly, Mr. McLean states in his Statement of Counsel that he had "reviewed Mr. Green's most recent mental health examination dated May 17, 2007, at the Jester IV Unit. There is no indication in those records that Mr. Green is mentally ill or incompetent." (*Id.*) Yet a review of the mental health examination cited by Mr. McLean immediately reveals the falsity of this statement. On the first page of a "Mental Health Inpatient Psychosocial Evaluation," taken on May 17, 2007, in Jester IV, Mr. Green is diagnosed with schizoaffective disorder. (Doc. No. 30-3 at 2.) Also on the first page, the report indicates that, when Mr. Green was asked to summarize his clinical complaint, he stated that he needed "someone to take this locator out of my head. The FBI put it in my brain sometime [sic] ago. Now I have headaches all the time." (*Id.*) The next page reports that Mr. Green received mental health treatment in the "free world" before he was sent to death row, and had received mental health treatment while incarcerated. (*Id.*) It also states: "[Mr. Green] has a history of suicide attempts and self-mutilation" and "has been diagnosed with Delusional Disorder, Schizophrenia, Paranoid Type, Polysubstance Dependence, and Antisocial Personality Disorder." (*Id.*) At the time of the report, Mr. Green was taking Haldol, an antipsychotic drug. (*Id.*) The report cited by Mr. McLean was replete with evidence of current, longstanding mental illness. This directly contradicts the assertion made by Mr. McLean and raises questions as to the veracity of his contention of having reviewed the record.

Mr. McLean never raised an ineffective assistance of trial counsel claim. There is no indication that he conducted an investigation into Mr. Green's background.[1] Yet, as the Texas Court of Criminal Appeals has explained, "[i]n most instances, the record on direct appeal is inadequate to develop an ineffective assistance claim." *Ex parte Torres*, 943 S.W.2d 469, 475

---

[1] Respondent appears to concede that Mr. McLean did not conduct any investigation into Mr. Green's past by arguing that "[t]he trial record is where reasonable postconviction counsel would begin. And for claims largely refuted by the trial record, the trial record is where reasonable postconviction counsel would end." (Doc. No. 68 at 7.)

(Tex. Crim. App. 1997). "[T]he inadequacy of the appellate record in these situations is due to the inherent nature of most ineffective assistance claims. The very ineffectiveness claimed may prevent the record from containing the information necessary to substantiate such a claim." *Id; see also Martinez v. Ryan*, 566 U.S. 1, 13, 132 S. Ct. 1309, 1318, 182 L. Ed. 2d 272 (2012) ("Ineffective-assistance claims often depend on evidence outside the trial record").

Respondent maintains that Mr. McLean could have deduced from the trial record that an ineffective assistance of trial counsel claim was unsupportable, making his failure to investigate with regard to that claim reasonable. Indeed, Mr. Green insisted on representing himself for much of the pre-trial period, as well as the guilt-innocence phase of his trial. "[W]hen a convicted defendant has insisted upon self-representation, any subsequent claim of ineffective assistance of counsel is not to be considered." *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). Thus, the Court agrees that Mr. McLean's failure to investigate an ineffective assistance of counsel claim as to Mr. Green's representation of himself *during the guilt-innocence phase* of the trial was reasonable.

But the record also reflects that, at the end of the guilt-innocence phase, when the jury pronounced its guilty verdict, Mr. Green withdrew his waiver of counsel. (Doc. No. 30 at 6.) Tyrone Moncriffe, who had previously been appointed as Mr. Green's standby counsel, was appointed as full-fledged counsel for the punishment phase of the trial. While Mr. Moncriffe was standby counsel, he does not appear to have engaged in any sort of investigation of the case or Mr. Green's background—nor was he required to. "There can be no question that the roles of standby counsel and full-fledged defense counsel are fundamentally different. The very definition of full-fledged counsel includes the proposition that the counselor, and not the accused, bears the responsibility for the defense; by contrast, the key limitation on standby

counsel is that such counsel *not be responsible*—and not be perceived to be responsible—for the accused's defense." *United States v. Taylor*, 933 F.2d 307, 312 (5th Cir. 1991).

Once he was appointed as full-fledged counsel, Mr. Moncriffe bore the responsibility for Mr. Green's defense and was constitutionally required to provide effective assistance of counsel. The ABA Guidelines in place at the time of Mr. Moncriffe's representation provide that investigations into mitigating evidence "should comprise efforts to discover all reasonably available mitigating evidence and evidence to rebut any aggravating evidence that may be introduced by the prosecutor." ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases 11.4.1(C), p. 93 (1989). Mitigating evidence has been defined as "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio*, 438 U.S. 586, 604 (1978). "A decision not to investigate must be directly assessed for reasonableness in all the circumstances.'" *Canales v. Stephens*, 765 F.3d 551, 570 (5th Cir. 2014) (citing *Wiggins*, 539 U.S. at 533).

Mr. Moncriffe conducted no investigation into Mr. Green's background and did not ask the court to appoint a mitigation specialist, an investigator, a psychiatric expert, or any other assistance that courts regularly provided capital defense lawyers for the development of a mitigation case. He requested no school records, criminal records, medical records, or employment records. Mr. Moncriffe did not present any mitigating evidence, beyond examining the eight witnesses whom Mr. Green had originally planned to call. These witnesses consisted of Mr. Green's mother, brother, and uncle, and five individuals loosely related to Mr. Green.[2] Mr.

---

[2] These witnesses included the director of a recreational center where Mr. Green spent some time; an individual who volunteered with Mr. Green as part of a church group; an individual who played pick-up basketball with Mr. Green; Mr. Green's gym coach from seventeen years prior; and Mr. Green's former Sunday school teacher with whom he lived for some time. (R.R. Vol. 17

Moncriffe did not elicit any information about Mr. Green's impoverished and abusive upbringing, nor about his family's history of mental illness. The examination of both the state's and Mr. Green's witnesses in the punishment phase lasted one day, and Mr. Moncriffe's direct examination of the mitigation witnesses comprises 18 pages in the trial transcript. Mr. Green's mother could have told the jury about the deprivation and abuse Mr. Green had suffered as a child, as well as the mental illness that runs through their family. Yet her direct examination by Mr. Moncriffe totals three pages of transcript and touched on neither of these topics. (Reporter's Record ("R.R.") Vol. 17 at 97, 99, 106.) Similarly, the direct examination of Mr. Green's uncle consists of one page of testimony, while Mr. Green's brother's direct examination went on for two pages. Importantly, Mr. Moncriffe could not have made a strategic decision to focus on other aspects of Mr. Green's childhood, because he did not conduct a reasonable investigation on which to base any strategic decision. *Escamilla v. Stephens*, 749 F.3d 380, 392–93 (5th Cir. 2014) ("[I]f a purportedly tactical decision is not preceded by a reasonable investigation, then it is not sufficiently informed and not entitled to the deference typically afforded counsel's choices").

Because Mr. Moncriffe did not conduct any investigation into Mr. Green's background, he failed to uncover and elicit powerful mitigating evidence. Contrary to the prosecution's unchallenged assertion that Mr. Green "was brought up in the best of circumstances," Mr. Green was one of three children born into extreme poverty to a single mother, Betty Ivy, in Shreveport, Louisiana. (R.R. Vol. 18 at 33.) He suffered extreme physical abuse at the hands of his alcoholic biological father, who beat him regularly from the time he was a very young child. Mr. Green witnessed his father beat Ms. Ivy and his siblings as well. Mr. Green eventually moved to Houston with Ms. Ivy. There, Ms. Ivy married twice. Both of her husbands continued the

at 86, 91, 94, 103, 110.)

physical abuse that Mr. Green experienced at the hands of his biological father. To escape the abuse, Mr. Green and his brothers left home. They lived on the streets, in shelters, and occasionally with Ms. Ivy's sister, experiencing little stability. When Mr. Green was approximately 12 years old, another teenager smashed a brick into Mr. Green's head, leaving Mr. Green bloody and disoriented. Several years later, Mr. Green was severely beaten by a neighborhood gang.

Mr. Moncriffe also failed to uncover and present powerful evidence regarding the family's history of mental illness. Mr. Green's maternal aunt suffers from schizoaffective disorder, hallucinations and depression. Mr. Green's mother has been hospitalized for a nervous breakdown, and stated that she has been diagnosed with a psychotic disorder. Mr. Green's brother Thomas has been diagnosed with schizophrenia, and his other brother, Oscar, has been diagnosed with bipolar disorder.

Even without investigating this background, Mr. Moncriffe was concerned about Mr. Green's behavior. According to the report prepared by the psychologist appointed to evaluate Mr. Green's competency, Mr. Moncriffe "indicated that Mr. Green occasionally appears to be suspicious and paranoid . . . Mr. Moncriffe also stated that occasionally Mr. Green 'acts like he's talking to a third party.'" (Competency Evaluation, Clerk's Record, Volume 1, at 266.) Although Mr. Green was found competent to stand trial and to waive his right to an attorney, a minimal investigation into Mr. Green's personal and family history would have yielded evidence of brain damage or mental illness. Mr. Moncriffe could have presented that evidence to the jury as a way to explain Mr. Green's behavior in representing himself, as well as a reason to find Mr. Green less personally culpable for his acts. *See, e.g.*, *California v. Brown*, 479 U.S. 538, 545 (1987) (O'Connor, J., concurring) (emphasis in original) ("[E]vidence about the defendant's background

and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse. . . . Thus, the sentence imposed at the penalty stage should reflect a reasoned *moral* response to the defendant's background, character, and crime"); *Smith v. Texas*, 543 U.S. 37, 44 (2004) (reversing Texas's rule requiring a defendant to show that his mitigation evidence rises to the level of a "severe permanent handicap[]" as overly restrictive in light of the fact that "the jury must be given an effective vehicle with which to weigh mitigating evidence so long as the defendant has met a 'low threshold for relevance'"); *see also Penry v. Johnson*, 532 U.S. 782, 797 (2001) (internal quotations and citations omitted) ("[T]he jury [must] be able to consider and give effect to a defendant's mitigating evidence in imposing sentence . . . . For it is only when the jury is given a vehicle for expressing its reasoned moral response to that evidence in rendering its sentencing decision that we can be sure that the jury has treated the defendant as a uniquely individual human being and has made a reliable determination that death is the appropriate sentence").

Mr. Moncriffe's preparation for the punishment phase of Mr. Green's trial was even more desultory than that of trial counsel in *Wiggins* and *Trevino*, whose performance was found constitutionally deficient. In *Wiggins*, trial counsel's failure to investigate Wiggins' background was held, by the Supreme Court, to constitute deficient performance. The Court found that counsel's strategy of retrying the guilt-innocence issue at punishment was unreasonable, because they failed to uncover significant evidence of Wiggins' deprived childhood. *Wiggins*, 539 U.S. at 536 (2003) ("[C]ounsel were not in a position to make a reasonable strategic choice as to whether to focus on Wiggins' direct responsibility, the sordid details of his life history, or both,

because the investigation supporting their choice was unreasonable"); *see also Smith v. Dretke*, 422 F.3d 269, 284 (5th Cir. 2005) ("If trial counsel's investigation was unreasonable then making a fully informed decision with respect to sentencing strategy was impossible," and the district court's decision "to give deference to trial counsel's strategic decision would also be objectively unreasonable").

In *Trevino*, the Fifth Circuit found that trial counsel's performance was constitutionally deficient when counsel conducted a "minimal investigation" (involving interviewing a few of Trevino's family members), failed to request mitigation experts, and called only one witness. *Trevino v. Davis*, 829 F.3d 328, 350 (5th Cir. 2016). This witness's testimony comprised approximately five transcript pages. *Id.*; *see also Canales*, 765 F.3d at 569 ("By Canales's trial counsel's own admission, they did not conduct any mitigation investigation. A declaration from his trial counsel shows that trial counsel did not hire a mitigation specialist, interview family members or others who knew him growing up, or 'collect any records or any historical data on his life' . . . . Thus, we conclude that Canales's claim of ineffective assistance of trial counsel during sentencing is substantial.")

Here, Mr. Moncriffe conducted no investigation (beyond interviewing a few of Mr. Green's family members when he was stand-by counsel), requested no experts, and presented only the witnesses prepared by Mr. Green. With those witnesses, Mr. Moncriffe engaged in perfunctory questioning which revealed none of Mr. Green's traumatic childhood or potential brain damage and mental illness. The jury heard none of the powerful evidence that could have been proffered as a basis for a sentence less than death.

Respondent argues that Mr. Moncriffe did not need to conduct the investigation outlined above, because he had acted as stand-by counsel for Mr. Green for eight months. Therefore,

when Mr. Moncriffe was appointed as Mr. Green's full-fledged counsel on the morning the punishment phase began, "Moncriffe was ready." (Doc. No. 43 at100.) This argument fails, because of the "limited role" played by a standby attorney. *Taylor*, 933 F.2d at 312.

Although a defendant should not be allowed to abuse the right to counsel or the right to waive it, "a defendant who waives the right to counsel is entitled to withdraw that waiver and reassert the right." *Id*. at 311. "There can be no question that the roles of standby counsel and full-fledged defense counsel are fundamentally different. The very definition of full-fledged counsel includes the proposition that the counselor, and not the accused, bears the responsibility for the defense; by contrast, the key limitation on standby counsel is that such counsel not be responsible —and not be perceived to be responsible—for the accused's defense." *Id.* at 312. As standby counsel, Mr. Moncriffe may have spent time with Mr. Green, advising him on "the important aspects of a punishment defense" and "walking him through the procedures to subpoena witnesses," as Respondent asserts. (Doc. No. 43 at 99.) But this is a far cry from the type of "intensive mitigation investigation[]" that a full-fledged lawyer has the responsibility to conduct in a capital case. *Trevino*, 829 F.3d at 350 (5th Cir. 2016). Although Mr. Moncriffe may have felt ready to examine the witnesses that *Mr. Green* had planned to call, this does not mean that his representation of Mr. Green was constitutionally adequate. Instead of relying on Mr. Green's trial strategy, Mr. Moncriffe was responsible for conducting his own investigation and preparing a mitigation case—because the counselor, and not the accused, bears the responsibility for the defense. Furthermore, Mr. Green's refusal to utilize court-appointed experts and investigators when he was insisting on representing himself does not mean, once he withdrew his waiver of counsel, that his appointed counsel had no obligation to try to conduct a constitutionally adequate investigation. While Mr. Green may have been pursuing, as his own

lawyer, a mitigation case that did not include the presentation of his family and social history, once Mr. Green changed his decision about his desire to represent himself, Mr. Moncriffe had a duty to independently explore those aspects of mitigation. *Cf. Schriro v. Landrigan*, 550 U.S. 465, 477 (2007) (state court did not unreasonably apply *Strickland* in denying habeas relief where defendant refused to allow counsel to present mitigating evidence from his family, and was questioned about this decision by trial court).

The tight timeline between Mr. Moncriffe's appointment as full-fledged counsel and the start of the punishment phase also cannot excuse his complete failure to investigate. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Given that Mr. Green's life was on the line, and that Mr. Moncriffe had not conducted any investigation or preparation for the punishment phase of the trial, Mr. Moncriffe should have requested a continuance from the trial.

Granting a continuance is within the trial court's discretion, and given the circumstances here—where Mr. Green had, until that morning, waived his right to counsel and during his self-representation refused to cooperate with an appointed investigator—there is reason to believe the trial court would have granted the request. Furthermore, there is no indication that Mr. Moncriffe made a strategic decision not to ask for a continuance. Indeed, there is simply no strategic reason for not doing so, as the only negative outcome could have been a denial of said request. *See, e.g.*, *Canales v. Stephens*, 765 F.3d 551, 569 (5th Cir. 2014) ("[C]ounsel did not make a strategic choice to forego a mitigation investigation. Instead, he chose not to pursue that claim in any

depth because he thought he could not receive any additional funding to pursue those claims. Accordingly, his performance fell below an objective standard of reasonableness.")

Even if the trial court had denied the request, Mr. Green would have likely prevailed on an appeal of this denial. A denial of a request for a continuance is reviewed for abuse of discretion. *United States v. Davis*, 61 F.3d 291, 298 (5th Cir.1995). Although "not every denial of a request for more time that violates due process . . . a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). Factors considered by the Fifth Circuit when determining whether a continuance was warranted are: "the amount of time available for preparation; defendant's role in shortening the time needed; the likelihood of prejudice from denial; and the availability of discovery from the prosecution." *United States v. Messervey*, 317 F.3d 457, 462 (5th Cir. 2002).

In *Powell v. Collins*, the Eleventh Circuit, considering a similar set of factors, held that the trial court's denial of the defendant's request for a continuance between the guilt and punishment phases of his capital trial was an abuse of discretion. 332 F.3d 376, 397 (6th Cir. 2003). Part of the trial court's reasoning in denying the request was the inconvenience imposed on the jury by causing further delay. But the Eleventh Circuit stated that "any inconvenience to the jury in this regard pales when compared to the gravity and magnitude of the issue involved— i.e., whether the death penalty should be imposed." *Id.* The court also found that the defendant was prejudiced by the trial court's denial of the request, because "the additional time would have afforded him the opportunity to gather additional mitigation evidence from his family and friends . . . ." *Id.*

The Fifth Circuit has found no abuse of discretion when the trial court granted a one-week continuance instead of the requested four-week continuance, and the defendant's counsel had over one month in which to prepare for trial. *United States v. Flores*, 63 F.3d 1342, 1364 (5th Cir. 1995). Similarly, the Fifth Circuit found that a trial court was within its discretion in denying a request for a 30-day continuance when the defendant's "second team of attorneys had over six months in which to prepare for trial." *United States v. Hall*, 152 F.3d 381, 420 (5th Cir. 1998). These cases are easily distinguishable from Mr. Green's situation: neither involved the "ultimate punishment" of the death penalty, and in both instances, the defendants' trial teams had been given ample time to prepare for trial, but were requesting more time. *Johnson v. Texas*, 509 U.S. 350, 380 (1993). Here, however, Mr. Moncriffe had no time to prepare for the punishment phase, and was thus unable to present any of the significant mitigating evidence that existed to the jury. Accordingly, there is reason to believe that the trial court would have granted Mr. Moncriffe's request for a continuance. If it had denied his request, this denial could have been appealed, with ample merit, as an abuse of discretion. But Mr. Moncriffe failed, for no strategic reason, to request a continuance. Because of Mr. Moncriffe's failure to take the appropriate steps to conduct a constitutionally adequate investigation into Mr. Green's background, Mr. Green presents a substantial claim of ineffective assistance of trial counsel.

Furthermore, this Court finds that state habeas counsel was ineffective in failing to raise the ineffective assistance of trial counsel claim. Despite a record which revealed Mr. Moncriffe's last-minute appointment, his failure to request a continuance, and a non-existent investigation into Mr. Green's family and social history, state habeas counsel appears to have conducted no investigation outside the record. "In most instances, the record on direct appeal is inadequate to develop an ineffective assistance claim." *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim.

App. 1997); s*ee also Martinez v. Ryan*, 566 U.S. at 11 ("Claims of ineffective assistance at trial often require investigative work . . . ."). "[T]he inadequacy of the appellate record in these situations is due to the inherent nature of most ineffective assistance claims. The very ineffectiveness claimed may prevent the record from containing the information necessary to substantiate such a claim." *Id.* Here, the record would have revealed the utter lack of investigation and preparation of a mitigation case, as well as Mr. Moncriffe's failure to request a continuance or any other assistance from the trial court. Mr. McLean should have known that these deficiencies required at least investigating a potential ineffective assistance of trial counsel claim. *See Trevino*, 829 F.3d at 349 ("Trevino's state trial counsel presented only one mitigation witness and no other evidence during the punishment phase. The deficiency in that investigation would have been evident to any reasonably competent habeas attorney.") This investigation is so important because Mr. McLean would not have known the powerful mitigating evidence that Mr. Moncriffe failed to present, precisely because of Mr. Moncriffe's ineffectiveness. Thus, Mr. McLean should have conducted his own investigation into Mr. Green's background. *Trevino v. Davis*, 829 F.3d at 348–49 (5th Cir. 2016) ("If state habeas counsel is not subject to the same requirement to perform some minimum investigation prior to bringing the initial state habeas petition, the *Martinez/Trevino* rule [allowing ineffective assistance of state habeas counsel to serve as "cause" for a procedural default] would have limited utility (if any) in addressing *Wiggins* claims.") Mr. McLean's failure to do so fell below an objective standard of reasonableness, and as such, Mr. Green's procedural default in failing to raise ineffective assistance of trial counsel at the state habeas level is excused.

The Court also finds, for the above reasons, that Mr. Green has presented a substantial claim of ineffective assistance of trial counsel necessary under the *Martinez/Trevino* rubric. An

evidentiary hearing is needed to further evaluate this claim, specifically to determine whether Mr. Green can prove prejudice as a result of his trial counsel's deficient performance. *Schriro*, 550 U.S. at 468 ("In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court"). This case presents exactly the set of facts that the Supreme Court was concerned about in *Martinez* and *Trevino*. Because of the performance of Mr. Green's trial counsel, the jury never heard any of a wealth of mitigating evidence about Mr. Green's family and social history. And because of the performance of Mr. Green's state habeas counsel, no appeals court has considered his ineffective assistance of trial counsel claim. *Trevino v. Thaler*, 133 S. Ct. at 1921 (*quoting Martinez v. Ryan*, 132 S.Ct. at 1320). ("[F]ailure to consider a lawyer's 'ineffectiveness' during an initial-review collateral proceeding as a potential 'cause' for excusing a procedural default will deprive the defendant of any opportunity at all for review of an ineffective-assistance-of-trial-counsel claim.") For these reasons, Mr. Green's motion for reconsideration is granted as to his first claim for relief.

### B.    Fifth & Sixth Claims

In his fifth claim, Mr. Green argues that trial counsel failed to bring evidence of Mr. Green's incompetence to stand trial to the trial court's attention, and that Mr. Green's procedural default should be excused because state habeas counsel was ineffective in failing to raise the claim. The Court observed, in its March 29, 2016 Memorandum and Order, that the trial record showed that "two judges conducted several separate colloquies with Green to determine the knowing and voluntary nature of his waiver of his right to counsel," and that "Green's answers to their questions . . . were lucid and responsive." (Doc. No. 55 at 13.) The Court further noted that the trial court appointed an independent expert to evaluate Mr. Green's competency to stand trial,

and that the expert determined that Mr. Green was competent. Based on the record, state habeas counsel was reasonable and was justified in concluding that trial counsel was not ineffective for failing to challenge the competency and knowing and voluntary waiver determinations, and thus deciding not to investigate further.

In his sixth claim, Mr. Green contends that trial counsel's failure to contest the knowing nature of his waiver of counsel deprived Mr. Green of his Sixth Amendment right to counsel, and that Mr. Green's procedural default should be excused because state habeas counsel was ineffective in failing to raise the claim. As discussed in more detail in the March 29, 2016 Memorandum and Order, Mr. Green's waiver of counsel was knowing and voluntary. Because the waiver was valid, counsel did not abandon him. Moreover, because the waiver was valid, state habeas counsel did not render ineffective assistance by failing to raise this issue. Thus, Mr. Green is not entitled to a hearing on these issues.

D.     **Evidentiary Hearing**

The Court noted, in its previous Memorandum and Order, that there is a split of authority as to whether a defendant can waive a substantive claim that he was incompetent to stand trial. Based on evidence presented in this federal petition, the Court ordered an evidentiary hearing on Mr. Green's claim that he was incompetent to stand trial. Respondent argues that the Court erred because the claim is unexhausted, and because Mr. Green failed to develop the factual basis for the claim in state court.

Respondent correctly notes that petitioners are generally required to exhaust their claims in state court before raising them in a federal habeas corpus petition. *See, e.g.*, *Coleman v. Thompson*, 501 U.S. 722 (1991). However, this Court addressed that argument in its March 29,

2016 Memorandum and Order:

> Courts are split . . . as to whether a substantive claim of incompetence, i.e., a claim that the defendant stood trial while he was actually incompetent, can be procedurally defaulted. While many courts have found that substantive claims of incompetency may be procedurally defaulted, *see Smith v. Moore*, 137 F.3d 808, 818-19 (4th Cir. 1998); *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306-07 (9th Cir. 1996); *Bainter v. Trickey*, 932 F.2d 713, 716 (8th Cir. 1991); *United States ex rel. Lewis v. Lane*, 822 F.2d 703, 705 (7th Cir. 1987), other courts have held that language in *Pate* [*v. Robinson*, 383 U.S. 375, 384 (1966)] prohibiting the waiver of competency claims applies to the procedural default doctrine as well, *see Rogers v. Gibson*, 173 F.3d 1278, 1289 (10th Cir. 1999); *Medina v. Singletary*, 59 F.3d 1095, 1111 (11th Cir. 1995); *Silverstein v. Henderson*, 706 F.2d 361, 367 (2d Cir.1983), *Zapata v. Estelle*, 588 F.2d 1017, 1021 (5th Cir. 1979). While Green's claims of incompetency are unexhausted, this Court is disinclined to find the substantive claim procedurally barred. Due to this split in the courts, this Court will consider the merits of the substantive competency claim.

(Doc. No. 55 at 15). Respondent's argument on this issue boils down to pointing out that the factual scenarios in the cases cited by this Court were somewhat different that this case. While this may be true, these differences do not negate the broader principle that substantive competency claims are not subject to procedural default. Therefore, respondent's motion for reconsideration of this Court's ruling on Mr. Green's substantive competency claim is denied.

Respondent also correctly points out that 28 U.S.C. § 2254(e)(2) prohibits evidentiary hearings in federal habeas corpus proceedings when "the applicant has failed to develop the factual basis for his claim in State court proceedings." The Supreme Court has explained that a petitioner does not "fail" to develop the factual basis if he makes "a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Williams v. Taylor*, 529 U.S. 420, 435 (2000). Respondent argues that Mr. Green was not diligent in state court because he did not seek an evidentiary hearing.

In most cases, Respondent's argument would be correct. The facts of this case are, however, somewhat unusual. As discussed above, and in the March 29, 2016 Memorandum and

Order, state habeas counsel was reasonable in deciding not to raise a competency claim because the record amply supported a finding that Mr. Green was, in fact, competent. Evidence developed since Mr. Green's state habeas proceedings, however, suggests that Mr. Green suffers from serious mental illness which may have existed at the time of his trial, and which may have rendered him incompetent.

Because state habeas counsel was reasonable in deciding not to conduct further investigation into Mr. Green's competency, the lack of factual development in the state proceeding was not a result of lack of diligence. Therefore, the Court finds that § 2254(e)(2) does not prohibit an evidentiary hearing. Notwithstanding the lack of a state court record on this issue, evidence now exists raising serious questions about Mr. Green's competency to stand trial. The Court therefore maintains that an evidentiary hearing is required to resolve these questions.

**IV.    ORDER**

For the foregoing reasons,

It is **ORDERED** that Respondent's Motion for Reconsideration (Doc. No. 57) is

**DENIED**;

It is **FURTHER ORDERED** that Petitioner's Cross-Motion for Reconsideration (Doc.

No. 64) is **GRANTED** as to Petitioner's first claim for relief, and **DENIED** as to Petitioner's

fifth and sixth claims for relief;

It is **FURTHER ORDERED** that the parties shall confer and, within 30 days of the date

of this Order, file a joint proposed scheduling order for the conduct of the evidentiary hearing in

this case.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this 10th day of May, 2017.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE